UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK F. MUZYKA,

        Plaintiff,                   CIVIL ACTION NO. 06-13611

      v.                                 DISTRICT JUDGE PAUL D. BORMAN

UNITED PARCEL SERVICE and       MAGISTRATE JUDGE VIRGINIA M. MORGAN
TEAMSTERS LOCAL UNION 243,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

      This is a *pro se* action in which the plaintiff alleges that defendant United Parcel Service (hereinafter "UPS") discriminated against him based upon his disability, in violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*., and that defendant Teamsters Local Union 243 (hereinafter "the Union") breached its duty of fair representation, in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  The matter comes before the court on the Union's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  By order dated November 15, 2006, the district judge referred the Union's motion to this court for report and recommendation. The court held oral argument on January 10, 2007.  Upon consideration of the pleadings, the

-1-

Union's motion and exhibits, and the parties' oral arguments, the court recommends that the Union's motion be **GRANTED**.

## II.  Background

Plaintiff was employed with UPS for approximately 28 years.  He began working for UPS as a part-time sorter and eventually moved into a full-time position as a delivery driver.  Pursuant to his employment with UPS, plaintiff was a member of Teamsters Local 243.

According to the allegations of the complaint, in late 2004 or early 2005, plaintiff, who was then working in UPS's Livonia office, began having problems at work.  The allegations of the complaint are somewhat vague in this regard, but it appears that plaintiff was having difficulty completing his delivery route on a daily basis, that he did not get along with his new supervisor, and that he received a number of "write-ups" for performance related issues.  Plaintiff requested that he be transferred to a different position, but his requests were denied.

Plaintiff was ultimately discharged on August 30, 2005, based upon an incident that occurred as he was unloading packages at the business premises of the Nailco Group.  According to the Union, on August 23, 2005, plaintiff threw a package out of his truck and struck a Nailco employee with it.  At oral argument, plaintiff denied that he intentionally threw the package out of the truck.  Rather, he suggested that the package simply fell out of the truck due to his mishandling of it.  However, plaintiff conceded that the package struck the Nailco employee and that the incident resulted in the termination of his employment.

On September 1, 2005, plaintiff filed a grievance to contest his discharge.  Greg Lowran, the Union's Secretary-Treasurer, contacted plaintiff by telephone to prepare for the pending local

grievance hearing.[1]  Plaintiff indicated to Lowran that the difficulties he was having at work were related to certain medical problems.  Lowran scheduled a meeting with plaintiff and requested that he bring documentation of his medical problems.

In September, 2005, Lowran met with plaintiff, his wife, and his sister.  Pursuant to Lowran's request, plaintiff presented a letter from his treating physician, Dr. Lynda Rayos, dated September 6, 2005.  In the letter, Dr. Rayos stated that plaintiff had been under her care since June of 2001, that he was being treated for attention deficit disorder, depression, acute situational anxiety, restless leg syndrome, and hypertension, and that he was taking a number of medications for his various conditions, including Concerta, Cardizem, Zoloft, and Xanax.  Dr. Rayos opined that "[w]ith all of his medical problems and medications, Fred has had to deal with continual issues of moodiness, irritability and at times, lack of attention.  This may have had an effect on him at work and at home."

Under the terms of the collective bargaining agreement, plaintiff could be discharged for just cause only.  Lowran and plaintiff agreed to contest plaintiff's discharge on the ground that his medical problems were causing his work performance issues and that UPS did not have just cause to terminate him in light of his medical issues.  Lowran and plaintiff also agreed that they would request that plaintiff be transferred from his delivery driver position to an "inside"

---

[1]The facts regarding the grievance process are drawn from Lowran's affidavit, which is attached to the Union's motion as Exhibit 1.  The facts set forth in the affidavit are essentially uncontested because plaintiff submitted no response to the Union's motion or any opposing evidence.  Further, at oral argument, counsel for the Union recited the facts set forth in Lowran's affidavit in detail.  Plaintiff conceded that the affidavit accurately recounted the grievance process and the actions the Union took on his behalf.

position. Plaintiff acknowledged to Lowran that he had struck a Nailco employee with a package and agreed that UPS ordinarily would have just cause to discharge an employee for throwing a package and striking a customer.

After the meeting, Lowran contacted Union steward and UPS employee Bob Golota regarding plaintiff. Golota informed Lowran that plaintiff was a hard worker with a good heart, but that he had trouble adapting to changes in his delivery route. Lowran also contacted the Nailco Group, which confirmed that on August 23, 2005, plaintiff threw a package that struck a Nailco employee.

Lowran represented plaintiff at the local level grievance hearing and presented Dr. Rayos' letter to the UPS representatives. When it became clear that the grievance would not be upheld, Lowran decided to "deadlock" it. Plaintiff's grievance was then submitted for hearing at the State Committee level.

In preparation for the State Committee hearing, Lowran obtained a second letter from Dr. Rayos, dated October 7, 2005, in which she recounted plaintiff's medical conditions, the medications he was taking, the side-effects he was experiencing, and the difficulties she was having finding the right mix of medications. Dr. Rayos offered the following opinion:

> Fred's medical problems pose a lifelong disability in regards to his job performance. Having attention deficit disorder causes him to have difficulty performing multiple tasks at one time including driving long hours at work. Fred would do better working at a repetitive job that requires less concentration on multiple tasks.
>
> In my opinion, Fred Muzyka would perform much better in a closed and controlled environment in which he would be responsible for doing one specific job to help his inability to

>perform multiple tasks at one time.  The decreased work load and decreased stress would also help.

In addition, Lowran met again with plaintiff, his wife, and his sister.  Lowran and plaintiff agreed to argue before the State Committee that plaintiff's work performance issues were caused by his medical condition and that UPS should accommodate plaintiff's disability by assigning him to an inside position.  They also agreed to request reinstatement and to have the period plaintiff was off work treated as an unpaid suspension.

Lowran represented plaintiff at the State Committee hearing, which was held on December 8, 2005.  As agreed, Lowran again argued that plaintiff's work performance issues, such as the difficulties he had adapting to changes in his delivery route, were a result of his medical condition.  In support of the argument, Lowran presented Dr. Rayos' letters to the Committee.  Lowran asked the Committee to place plaintiff in a temporary inside position or on disability leave until he could bid for a permanent inside position.  Plaintiff also spoke at the hearing, echoing Lowran's arguments.  In addition, Golota spoke at the hearing on plaintiff's behalf.

Following the hearing, the Committee met in a closed session, after which it announced that it was voting to deny the grievance.  Under the terms of the collective bargaining agreement, the Committee's determination was final.  On January 3, 2006, the Union sent a letter to plaintiff, notifying him that because the Committee had denied his grievance, the Union could take no further action.

-5-

On March 22, 2006, plaintiff, through counsel, filed a charge with the Equal Employment Opportunity Commission (EEOC) in which he alleged that UPS discriminated against him on the basis of his disability. On June 13, 2006, the EEOC issed a right to sue letter stating that their investigation revealed no violation of the ADA.

Plaintiff filed the present cause of action on August 14, 2006. As noted above, plaintiff alleges that UPS discriminated against him on the basis of his disability and that the Union breached its duty of fair representation.

### III.  Discussion

#### A.  Failure to Exhaust Administrative Remedies

The Union seeks dismissal of plaintiff's claims on the ground that he failed to file an EEOC charge against the Union prior to filing suit. A party seeking to bring suit under the ADA must indeed file an EEOC charge against the offending party. See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000)("Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination."). Further, the court agrees with the Union that nothing in the EEOC charge plaintiff filed against UPS could be construed as a claim of discrimination against the Union, that there is no identity of interest between UPS and the Union regarding plaintiff's EEOC charge, and that no basis for equitable tolling is present in the record. However, the court disagrees that plaintiff's failure to file an EEOC charge against the Union mandates dismissal of his claim. Plaintiff does not expressly allege that the Union discriminated against him on the basis of his disability, and the complaint contains no allegations that could

reasonably be construed as raising a disability discrimination claim against the Union. Rather, plaintiff simply alleges that the Union breached its duty of fair representation by failing to vigorously pursue his grievance. Therefore, plaintiff was not required to file an EEOC charge against the Union prior to filing suit.

### B.  Duty of Fair Representation

The Union moves for summary judgment on plaintiff's fair representation claim pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). Once the moving party has carried his or her burden of demonstrating the absence of a genuine issue of material fact, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1356. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

A union breaches its duty of fair representation "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir. 1983)(citing Vaca v. Sipes, 386 U.S. 171, 190 (1967))(internal quotations omitted). Plaintiff does not allege that the Union discriminated against him or that it acted in bad faith in the handling of his grievance. Rather, plaintiff's complaint, liberally construed, raises a claim that the Union acted arbitrarily during the grievance proceedings. A union acts arbitrarily where it "handles a grievance in a 'perfunctory manner, with caprice or without rational explanation." Poole, 706 F2d at 183. "The employee need not necessarily show bad faith, yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." Id.

On the record before the court, no reasonable juror could conclude that the Union acted in an arbitrary manner in its representation of plaintiff. Acting on behalf of the Union and plaintiff, Lowran met with plaintiff, his wife, and plaintiff's sister on two occasions to prepare for the grievance hearings, obtained supporting documentation from plaintiff's treating physician, independently investigated the incident that led to plaintiff's discharge, and pursued a reasonable course of action in arguing that plaintiff should be reinstated and placed in an "inside" job to accommodate his disability. In addition, Lowran pursued the grievance to the final step permitted under the collective bargaining agreement. Even if, as plaintiff suggests, there was something more the Union could have done on plaintiff's behalf – and there is nothing

in the record to suggest that there was – it cannot be said that the Union handled plaintiff's grievance in a perfunctory manner, with caprice, or without rational explanation.  Rather, the record establishes that the Union adequately investigated the matter and provided adequate representation throughout the grievance proceedings.  Accordingly, the court concludes that the Union is entitled to summary judgment with respect to plaintiff's fair representation claim.

## IV.  Conclusion

For the reasons stated above, the court recommends that the Union's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
| Dated: February 8, 2007 | s/Virginia M. Morgan<br>VIRGINIA M. MORGAN<br>UNITED STATES MAGISTRATE JUDGE |

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon parties/counsel of record via the Court's ECF System and/or U. S. Mail on February 8, 2007.

> s/Jane Johnson
> Case Manager to
> Magistrate Judge Virginia M. Morgan