UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK F. MUZYKA,

   Plaintiff,        CIVIL ACTION NO. 06-13611

  v.           DISTRICT JUDGE PAUL D. BORMAN

UNITED PARCEL SERVICE and   MAGISTRATE JUDGE VIRGINIA M. MORGAN
TEAMSTERS LOCAL UNION 243,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a *pro se* action in which the plaintiff alleged that defendant United Parcel Service (hereinafter "UPS") discriminated against him based upon his disability, in violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*., and that UPS and defendant Teamsters Local Union 243 (hereinafter "the Union") are liable under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 for violation of the collective bargaining agreement. The matter comes before the court on the motion of the employer UPS to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.[1] No response was filed to the motion but plaintiff and his wife appeared and

---

[1] The Union is no longer a party to this action. Previously, the Union/Teamsters Local 243 moved for summary judgment and/or dismissal. The court recommended that summary judgment be granted. No objections were filed and that recommendation was accepted by the district court on March 21, 2007.

were heard at oral argument before the magistrate judge in April, 2007. Upon consideration of the pleadings, the employer's motion and exhibits, and the parties' oral arguments, the court recommends that the motion be **GRANTED**.

## II. Background

Plaintiff was employed with UPS for approximately 28 years. He began working for UPS as a part-time sorter and eventually moved into a full-time position as a delivery driver. Pursuant to his employment with UPS, plaintiff was a member of Teamsters Local 243.

According to the allegations of the complaint, in late 2004 or early 2005, plaintiff, who was then working in UPS's Livonia office, began having problems at work. The allegations of the complaint are somewhat vague but the facts in the motion indicate that UPS had received a number of customer complaints about the way he delivered packages and his behavior toward customers. It appears that plaintiff was having difficulty completing his delivery route on a daily basis, that he did not get along with his new supervisor, and that he received a number of "write-ups" for performance related issues. Plaintiff requested that he be transferred to a different position, but his requests were denied.

Plaintiff was ultimately discharged on August 30, 2005, for "gross negligence in violation of Article 17(I) of the Collective Bargaining Agreement." (Ex. 1, Discharge Letter of August 30, 2005; Ex. 30, Affidavit of Greg Lowran). The discharge was alleged based upon a history of failing to follow rules and regulations, and ultimately was triggered by an incident that occurred as he was unloading packages at the business premises of the Nailco Group. It was reported that on August 23, 2005, plaintiff threw a package out of his truck and struck a Nailco

employee with it.² Plaintiff denied throwing the package but conceded that the package struck the Nailco employee and that the incident resulted in the termination of his employment.

On September 1, 2005, plaintiff filed a grievance to contest his discharge. Greg Lowran, the Union's Secretary-Treasurer, contacted plaintiff by telephone to prepare for the pending local grievance hearing.³ Plaintiff indicated to Lowran that the difficulties he was having at work were related to certain medical problems. Lowran scheduled a meeting with plaintiff and requested that he bring documentation of his medical problems.

In September, 2005, Lowran met with plaintiff, his wife, and his sister. Pursuant to Lowran's request, plaintiff presented a letter from his treating physician, Dr. Lynda Rayos, dated September 6, 2005. In the letter, Dr. Rayos stated that plaintiff had been under her care since June of 2001, that he was being treated for attention deficit disorder, depression, acute situational anxiety, restless leg syndrome, and hypertension, and that he was taking a number of medications for his various conditions, including Concerta, Cardizem, Zoloft, and Xanax. Dr. Rayos opined that "[w]ith all of his medical problems and medications, Fred has had to deal with continual issues of moodiness, irritability and at times, lack of attention. This may have had an effect on him at work and at home."

---

²At oral argument on the previous motion, plaintiff denied that he intentionally threw the package out of the truck. Rather, he suggested that the package simply fell out of the truck due to his mishandling of it.

³The facts regarding the grievance process are drawn from Lowran's affidavit, which is attached to the motion as Exhibit 30. The facts set forth in the affidavit are essentially uncontested because plaintiff submitted no response to the motion or any opposing evidence. Further, at oral argument on the previous motion, plaintiff conceded that the affidavit accurately recounted the grievance process and course of the termination proceedings.

Under the terms of the collective bargaining agreement, plaintiff could be discharged for just cause only. Lowran and plaintiff agreed to contest plaintiff's discharge on the ground that his medical problems were causing his work performance issues and that UPS did not have just cause to terminate him in light of his medical issues. Lowran and plaintiff also agreed that they would request that plaintiff be transferred from his delivery driver position to an "inside" position. Plaintiff acknowledged to Lowran that he had struck a Nailco employee with a package and agreed that UPS ordinarily would have just cause to discharge an employee for throwing a package and striking a customer.

After the meeting, Lowran contacted Union steward and UPS employee Bob Golota regarding plaintiff. Golota informed Lowran that plaintiff was a hard worker with a good heart, but that he had trouble adapting to changes in his delivery route. Lowran also contacted the Nailco Group, which confirmed that on August 23, 2005, plaintiff threw a package that struck a Nailco employee.

Lowran represented plaintiff at the local level grievance hearing and presented Dr. Rayos' letter to the UPS representatives. When it became clear that the grievance would not be upheld, Lowran decided to "deadlock" it. Plaintiff's grievance was then submitted for hearing at the State Committee level. In preparation for the State Committee hearing, Lowran obtained a second letter from Dr. Rayos, dated October 7, 2005, in which she recounted plaintiff's medical conditions, the medications he was taking, the side-effects he was experiencing, and the difficulties she was having finding the right mix of medications. Dr. Rayos offered the following opinion:

> Fred's medical problems pose a lifelong disability in regards to his job performance. Having attention deficit disorder causes him to have difficulty performing multiple tasks at one time including driving long hours at work. Fred would do better working at a repetitive job that requires less concentration on multiple tasks.
>
> In my opinion, Fred Muzyka would perform much better in a closed and controlled environment in which he would be responsible for doing one specific job to help his inability to perform multiple tasks at one time. The decreased work load and decreased stress would also help.

Meanwhile, plaintiff sent a letter to UPS on October 10, 2005, requesting for the first time that UPS accommodate him under the ADA by reinstating him to an inside non-driving position. (Ex. 20) This was a post-termination request. On October 18, 2005, UPS sent plaintiff's physician Lynda Rayos a Request for Medical Information. (Ex. 22) She responded with opinions similar to that given to the Union. She stated that plaintiff would "not be able to drive for long periods of time and meet certain deadlines due to his inability to perform multiple tasks secondary to ADD." None of his conditions substantially limited his ability to perform any major life activities. (Ex. 22) On November 23, 2005, UPS sent plaintiff a letter advising him that based on the medical information received, he was not eligible for a reasonable accommodation pursuant to the ADA. (Ex. 21)

Lowran represented plaintiff at the State Committee hearing, which was held on December 8, 2005. UPS submitted evidence and argument that plaintiff was discharged for gross negligence. (Ex. 1, 25) The union argued that plaintiff's work performance issues, such as the difficulties he had adapting to changes in his delivery route, were a result of his medical condition and offered Dr. Rayos' letters to the Committee. Lowran asked the Committee to

place plaintiff in a temporary inside position or on disability leave until he could bid for a permanent inside position. Plaintiff also spoke at the hearing, echoing Lowran's arguments. In addition, Golota spoke at the hearing on plaintiff's behalf.

Following the hearing, the Committee met in a closed session, after which it announced that it was voting to deny the grievance. Under the terms of the collective bargaining agreement, the Committee's determination was final. On January 3, 2006, the Union sent a letter to plaintiff, notifying him that because the Committee had denied his grievance, the Union could take no further action.

On or about April 4, 2006, plaintiff, through counsel, filed a charge with the Equal Employment Opportunity Commission (EEOC) in which he alleged that UPS discriminated against him on the basis of his disability. (Ex. 27) There was no claim of age discrimination.[4] On June 13, 2006, the EEOC issued a right to sue letter stating that their investigation revealed no violation of the ADA.

Plaintiff filed the present cause of action on August 14, 2006. As noted above, plaintiff alleges that UPS discriminated against him on the basis of his disability and that the Union breached its duty of fair representation.

---

[4]Plaintiff's allegation in the complaint that he was "getting too old" could be read as an age claim. But, since no issue of age discrimination was raised before the EEOC, the claim is barred because filing an administrative charge within 300 days is "mandatory." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

**III. Discussion**

    **A. Standard of Review**

Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the court has considered affidavits and exhibits, a Rule 12(b)(6) determination is not appropriate and the court is to treat the motion as one for summary judgment. Briggs v. Ohio Elections Com'n, 61 F.3d 487 (6th Cir. 1995).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et. al., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). Once the moving party has carried his or her burden of demonstrating the absence of a genuine issue of material fact, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1356. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### B. Statute of Limitations and Exhaustion of Administrative Remedies

UPS seeks dismissal of plaintiff's complaint on the ground that he did not file his hybrid § 301 suit (29 U.S. C. § 185(a)) within six months. There is no express statute of limitations under § 301, but courts have applied the six month statute of limitations under § 10(b) of the National Labor Relations Act, 29 U.S.C. §160(b), to such claims. DelCostello v. Teamsters, 462 U.S. 151, 164-65 (1983). UPS argues that plaintiff's cause of action accrued by January 3, 2006, when the union sent him a letter advising him that no further action could be taken and he did not file his complaint until August, 2006. While that argument may be applicable to a portion of his complaint, it does not address the ADA portion of the complaint and dismissal of the entire action would be unwarranted.

A party seeking to bring suit under the ADA must indeed file an EEOC charge against the offending party. See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000)("Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination."). Plaintiff filed a timely charge with the EEOC against UPS for violation of the ADA. Thereafter, he timely filed his lawsuit.

### C. Hybrid §301 Claims

An employee is generally bound by the exclusive remedies provided in the collective bargaining agreement (CBA) unless he can show both that his employer breached the CBA and that the union breached its duty of fair representation. In such a hybrid-§301 suit the employee may sue the employer, the union, or both. However, in order to prevail, he must show that both

parties breached their respective obligations. Vencl v. Int'l Union of Operating Engineers, Local 18, 137 F.3d 420, 425 (6th Cir. 1998). In this case, the Union previously filed a motion and asked the court to determine as a matter of law that it did not breach its duty of fair representation. The court has done so. Therefore, plaintiff cannot go forward against the employer.

*Duty of Fair Representation*

As noted earlier, the issue has previously been decided by the court adversely to plaintiff. (Order Accepting Report & Recommendation and Granting Teamsters' Motion, March 21, 2007)

A union breaches its duty of fair representation "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir. 1983)(citing Vaca v. Sipes, 386 U.S. 171, 190 (1967))(internal quotations omitted). Plaintiff does not allege that the Union discriminated against him or that it acted in bad faith in the handling of his grievance. Rather, plaintiff's complaint, liberally construed, raises a claim that the Union acted arbitrarily during the grievance proceedings. A union acts arbitrarily where it "handles a grievance in a 'perfunctory manner, with caprice or without rational explanation." Poole, 706 F.2d at 183. "The employee need not necessarily show bad faith, yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." Id. On the record before the court, no reasonable juror could conclude that the Union acted in an arbitrary manner in its representation of plaintiff. Acting on behalf of the Union and plaintiff, Lowran met with plaintiff, his wife, and plaintiff's sister on two occasions to prepare for the grievance hearings, obtained supporting documentation

from plaintiff's treating physician, independently investigated the incident that led to plaintiff's discharge, and pursued a reasonable course of action in arguing that plaintiff should be reinstated and placed in an "inside" job to accommodate his disability. In addition, Lowran pursued the grievance to the final step permitted under the collective bargaining agreement. Even if, as plaintiff suggests, there was something more the Union could have done on plaintiff's behalf – and there is nothing in the record to suggest that there was – it cannot be said that the Union handled plaintiff's grievance in a perfunctory manner, with caprice, or without rational explanation. Rather, the record establishes that the Union adequately investigated the matter and provided adequate representation throughout the grievance proceedings. Accordingly, the court concludes that the employer UPS is entitled to summary judgment with respect to plaintiff's hybrid § 301 claims under the Labor Management Relations Act.

**Violation of the ADA**

Plaintiff also brings claims against UPS for violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*. These were brought forth first only after his termination and were presented to the EEOC. It is fundamental that an employer cannot discriminate because of a disability if it has no knowledge of the claimed disability. Kocsis v. Multi-Care Management, 97 F.3d 876, 884 (6th Cir. 1996). Here, there is no evidence that the decision-makers at UPS knew of his alleged disability prior to terminating him. In addition, even if plaintiff had made a timely request for accommodation, he would not have been eligible as a driver. His physician opined that he could not perform the driving duties because an inability to multi-task secondary to his ADA. He did ask for an inside position but there was no

evidence before the employer which would demonstrate that he would be ADA qualified.  An ADA covered disability exists only when an impairment "substantially limits a major life activity.  42 U.S.C. § 12102(2).  A "major life activity" includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).  Dr. Rayos indicated that plaintiff's impairment did not so affect him.  Further, the inability to perform one job does not constitute a substantial limitation in the major life activity of working.  29 C.F.R. § 1630.2(j)(3)(I).  As a result, plaintiff cannot establish that he was substantially impaired in the major life activity of working.  Sutton v. United Air Lines, 527 U.S. 471, 493 (1999).  Neither is there any evidence that UPS regarded plaintiff as disabled.   Thus, defendant UPS is entitled to summary judgment on this claim.

## IV.  Conclusion

For the reasons stated above, the court recommends that the motion of UPS for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                       s/Virginia M. Morgan
                                       Virginia M. Morgan
                                       United States Magistrate Judge

Dated: June 7, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 7, 2007.

                                       s/Jane Johnson
                                       Case Manager to
                                       Magistrate Judge Virginia M. Morgan